IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| derrick family: hawthorne; a true man of God AND THE PEOPLE OF THE STATE OF ILLINOIS EX REL DARREY HAWTHORNE, <br><br> Plaintiff(s), <br><br> v. <br><br> SILVERLEAF FUNDING, LLC, AS ASSIGNEE OF WOODBRIDGE MORTGAGE FUND 1, LLC, TAFT STETTINIUS & HOLLISTER ATTY. FOR SILVERLEAF FUNDING, BRIANNA SONSONE, INDIVIDUALLY, INVERSE ASSET FUND, ROBERT WOODS, INDIVIDUALLY, NEW PLAN INC., JOSEPH DEBELLA, JR. INDIVIDUALLY, <br><br> Defendants. | No. 16 CV 02934 <br><br> Judge John J. Tharp, Jr. |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Derrick Hawthorne filed this suit *pro se* in March 2016, the third in a series of suits he has attempted to litigate in this Court arising from a state court mortgage foreclosure action that resulted in entry of judgment against Hawthorne's now-dissolved company and an order confirming the sale of the property in January 2015.[1] His prior efforts having failed, Hawthorne now accuses the defendants of violating the federal Fair Debt Collection Practices Act ("FDCPA"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and the Illinois Collection Agency Act ("ICAA"). Hawthorne's complaint also asserts state tort claims for intentional infliction of emotional distress and intrusion upon seclusion. The

---

[1] *See Hawthorne v. Inverse Asset Fund, LLC*, No. 16 C 07440, Remand Order, ECF No. 6 (N.D. Ill. July 26, 2016); *Silverleaf Funding, LLC v. Home Electronic Solutions, Inc. et. al*, No. 15 C 04443, Remand Order, ECF No. 5 (N.D. Ill. June 10, 2015).

defendants, all entities and individuals which have been involved to varying degrees in underlying state court litigation, have moved to dismiss the complaint for lack of subject-matter jurisdiction, failure to state a claim, and insufficient service. That motion to dismiss is granted for the reasons set forth below.

## BACKROUND

The defendants lodged their joint motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and further argue that the case should be dismissed for insufficient service under Rule 12(b)(5). This Court takes as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences in favor of Hawthorne, the non-moving party. *See Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003) (Rule 12(b)(1); *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2012) (Rule 12(b)(6)). Still, the facts as alleged in the complaint are difficult to parse.

The confusion starts with the plaintiff's identity. Under a section labeled "The Parties," the complaint states that plaintiff Derrick Hawthorne is a "Citizen/National," and states that "Plaintiffs the People of the State of Illinois ex rel derrick family:hawthorne are at all times relevant to this action Illinoisans." Compl. ¶ 2. The caption of the complaint, as reflected above, lists "derrick family: hawthorne; a true man of God AND THE PEOPLE OF THE STATE OF ILLINOIS EX REL DARREY HAWTHORNE" as the "Plaintiff(s)." *Id.* at 1. The complaint is signed by "derrick Hawthorne," but verified by "derrick family: hawthorne." *Id.* at 14.[2] This, of course, is part of the unfortunately familiar gibberish of the "sovereign citizen" movement, whose theories have repeatedly been rejected as frivolous, bizarre, and nonsensical. Although

---

[2] This page of the complaint is actually numbered "16," but follows the first 13 pages of the complaint, which are numbered in that order. As the final sentence that appears on page 13 cuts off, it is possible that the complaint was filed with two pages—numbered 14 and 15—missing.

adorned with these trappings of the sovereign dogma, for the most part (exceptions noted below) the plaintiff's claims do not appear to invoke "sovereign" theories. Nor does it appear that the plaintiff in this case could be anyone other than an individual named Derrick Hawthorne. Accordingly, the Court proceeds from that premise.

Hawthorne asserts generally that the defendants have attempted to collect an alleged debt from him, but states that he is "without knowledge" of that debt. *Id.* ¶ 10. His complaint states that on April 15, 2014, he received a verified complaint by mail in state court case number 14 CH 03063. *Id.* ¶ 11. That state court complaint, which the defendants attach to their motion to dismiss,[3] was for a foreclosure action brought by current defendant Silverleaf Funding LLC, as assignee of Woodbridge Mortgage Investment Fund 1, LLC, against Hawthorne, Home Electronic Solutions, Inc.—which appears to be a now-dissolved corporation of which Hawthorne was the president, *see* Corporation File Detail Report, "Home Electronic Solutions, Incorporated," OFFICE OF THE ILL. SEC. OF STATE,

---

[3] Hawthorne attached just the first page of the 2014 state court complaint to his federal court complaint in this case, while the defendants attached what appears to be a complete copy, minus any exhibits. This Court may consider that document without converting the motion to dismiss into a motion for summary judgment. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). This Court may also take judicial notice of other public filings from that 2014 state court case as well as the 2016 forcible eviction action described, *infra*, at 4. "Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). This Court "may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Id.* at 773-74. The Seventh Circuit has also specifically found that a district court may take judicial notice of public court documents. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

https://www.ilsos.gov/corporatellc/CorporateLlcController—and other unknown owners, claimants, and occupants. *See* 2014 Compl., ECF No. 33-1. The 2014 complaint specifically involved a property at 4136 West Jackson Boulevard, in Chicago. *Id.* The state court judge later dismissed Hawthorne from the case, *see* State Order of 8/29/14, ECF No. 33-1, and entered judgment against Home Electronic Solutions, *see* State Order of 9/19/14, ECF No. 33-1. On January 9, 2015, the state court judge entered an order approving the report of the property's sale and distribution, confirming the sale, and issuing an order for possession. *See* State Order of 1/9/15, ECF No. 33-1. Hawthorne then lodged a motion on January 20, 2015, seeking to vacate those judgments and orders, which the state court judge denied on May 1, 2015. *See* Pet. to Vacate, ECF No. 33-1; State Order of 5/1/15, ECF No. 33-1.

Despite the foreclosure and sale of the property, Hawthorne refused to vacate the premises, prompting additional litigation in 2016. The property at 4136 West Jackson had been conveyed to Inverse Asset Fund LLC, a defendant in this federal court case;[4] in June 2016, Inverse Asset Fund—through its attorneys Taft Stettinius & Hollister and Brianna Sansone (misspelled "Sonsone" in Hawthorne's complaint), also defendants to the current action—lodged forcible eviction proceedings against Hawthorne in three separate state court cases numbered 16-M1-710912, 16-M1-710913, and 16-M1-710914. *See* Eviction Compls., ECF No. 33-1. The state court judge eventually entered final orders of possession against Hawthorne as to the subject property in all three proceedings on September 8, 2016. *See* State Orders of 9/8/16, ECF No. 33-1.

Hawthorne, meanwhile, had filed the current federal court complaint on March 8, 2016. In it, he alleges that on March 2, 2014, before he actually received a copy of the 2014 state court

---

[4] A sale deed was publicly recorded on October 29, 2016 to reflect that transfer. *See* Deed, ECF No. 331-1.

complaint, a process server acting on behalf of defendant Silverleaf Funding, LLC, falsified documents which stated that the process server had served the complaint by leaving it with a family member or co-resident. Compl. ¶ 13. The person who supposedly received service was not a resident of Illinois, and was actually at her place of employment on the morning the process server claimed to have completed service, Hawthorne asserts. *Id.* In making these allegations, Hawthorne invokes his constitutional rights to due process and to equal protection. *Id.* The complaint also asserts that the defendants "failed to inform Plaintiff of his validation rights" and seems to allege that they did not provide him sufficient notice of their attempt, as debt collectors, to collect a debt from him. *Id.* ¶ 14. Hawthorne says that he served the defendants with a notice that he was disputing the debt in accordance with the FDCPA, 15 U.S.C. § 1692g, and he attached a series of notarized documents referring to that notice—which seem to allege that the notice was served in February 2015, though it is difficult to make out on the scanned copies provided—to his complaint in this case. *See id.* ¶ 14; Compl. Ex. 3. On August 2, 2015, defendant Robert Woods came to Hawthorne's residence and left a note—the substance of which is unclear—with a family member who was visiting. *See* Compl. ¶ 17. Hawthorne stressed to Woods that "no liability between plaintiff(s) and these alleged new owners existed," but Woods continued to try to communicate with Hawthorne without his consent. *Id.* The subject of Woods' continued contacts with Hawthorne is, again, not alleged.

Hawthorne asserts that on September 24, 2015, he "issued a rescission notice of the consumer transaction," and that on January 12, 2016, he filed a "Notice of Judgment and Final Order Pursuant Rescission" in the Illinois state court. Compl. ¶¶ 15-16.[5] Based on the documents

---

[5] Hawthorne does not explain the purported significance of these documents, but it appears that he is invoking common and ineffective sovereign citizen claims that contracts can be nullified on election. *See, e.g., El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 750 (7th Cir.

5

Hawthorne attached to his complaint, it appears that he filed a letter dated September 24, 2015—which states that he was rescinding "the entire consumer credit transaction" related to the property at 4136 West Jackson Boulevard—with the Cook County Recorder of Deeds. *See* Compl. Ex. 4. It is not clear to this Court what Hawthorne refers to as his January 12, 2016 filing; the copy of the September 2015 letter he attached does appear, however, to have been notarized on that January date. *See* Compl. Exs. 4-5.

Hawthorne alleges that on March 3, 2016, defendants Joseph DeBella, Jr. and New Plan, Inc. threatened Hawthorne and his family with forcible removal from their home. Compl. ¶ 18. Hawthorne alleges that they did so "without first bringing such action before the judicial district; validating or obtaining verification; providing accurate accounting or chain of title; and, without providing an authentic agreement signed by Plaintiff or consent to communicate about any alleged debt." *Id.* DeBella "verbally terrorized" Hawthorne, and provided him with a business card, a copy of a judicial sale deed, and a letter on letterhead associated with defendant Taft Stettinius & Hollister LLP stating that DeBella was from New Plan and was "authorized to act on Inverse Asset Fund, LLC's behalf concerning the properties owned by Inverse Asset Fund, LLC." Compl. Ex. 6. DeBella also allegedly said that Hawthorne owed some $7,500 in back rent. Compl. ¶ 18.

---

2013). Hawthorne's unilateral "rescission" of any debts he has incurred is, of course, legally ineffective and will not be discussed further. *See Bey v. State of Indiana*, 847 F.3d 559, 561 (7th Cir. 2017) (in affirming dismissal of sovereign citizen claims, describing the sovereign citizen movement but clarifying that district court judges need not "delve into the history of every particular organization involved in every case before them"); *see also United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented.").

The defendants filed their joint motion to dismiss the case in October 2016, arguing that Hawthorne's claims are barred by the *Rooker-Feldman* doctrine and by the doctrine of *res judicata*. Mot. to Dismiss at 4. They further argue that Hawthorne's complaint should be dismissed for failure to state a claim and for insufficient service. *Id.* Hawthorne did not respond to the arguments in the motion, instead filing two letters he apparently sent to defense counsel in this case after the motion to dismiss in which Hawthorne referred to himself as a "Consumer Enforcement Director" and directed the recipients to stop contacting him about any alleged debts. *See* Notice of Filing, ECF No. 36. Hawthorne also submitted copies of the appearances that defense counsel submitted in this case with the word "RESCINDED" written across them in red ink. *Id.*

This Court now turns to the defendants' motion to dismiss.

**ANALYSIS**

The defendants' first argument is that Hawthorne's current claims are barred by the *Rooker-Feldman* doctrine and that this Court therefore lacks subject-matter jurisdiction to hear the case. *See* Mot. to Dismiss at 4-6. The *Rooker-Feldman* doctrine provides "that the Supreme Court of the United States is the sole federal tribunal authorized to review the judgments of state courts in civil litigation." *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015) (citing *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923); *D.C. Cir. v. Feldman*, 460 U.S. 462, 486 (1983)). The Seventh Circuit has explained:

> Lower federal courts are not vested with appellate authority over state courts. The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced. The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it.

*Sykes v. Cook Cty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741–42 (7th Cir. 2016) (citations omitted); *see also Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (quoting same); *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 603 (7th Cir. 2008) ("A state litigant seeking review of a state court judgment must follow the appellate process through the state court system and then directly to the United States Supreme Court.") (citation omitted). Claims "that directly seek to set aside a state-court judgment are *de facto* appeals that trigger the doctrine," and even federal claims "that were not raised in state court, or that do not on their face require review of a state court's decision, may be subject to *Rooker-Feldman* if those claims are closely enough related to a state-court judgment." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017).

The defendants argue that *Rooker-Feldman* applies because Hawthorne has challenged the adequacy of service in the underlying state court litigation—including by alleging that a process server falsified documents—and that this Court cannot rule on such an allegation because doing so would be a collateral attack on the state court's judgment. Mot. to Dismiss at 5. In the "petition to vacate" Hawthorne filed in the 2014 state court case on January 20, 2015, he did assert simply "1. Not properly served, 2. Fraud in factum," without additional argument. *See* Pet. to Vacate. The state court denied that motion on May 1, 2015. The state court therefore rejected Hawthorne's arguments of insufficient service in the 2014 case when deciding not to vacate its January 9, 2015 order confirming the judicial sale in that case. Under Illinois law, the state court's January 9, 2105 ruling was a final judgment on the merits. *See EMC Mortg. Corp. v. Kemp*, 982 N.E.2d 152, 154 (Ill. 2012) ("[I]t is the order confirming the sale, rather than the judgment of foreclosure, that operates as the final and appealable order in a foreclosure case."). There is also no indication that any state court appeal of that ruling was pending at the time Hawthorne filed this current suit. *See Parker v. Lyons*, 757 F.3d 701, 705-06 (7th Cir. 2014)

8

(agreeing with other federal circuit courts that have concluded, after the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), that "*Rooker–Feldman* does not bar the claims of federal-court plaintiffs who . . . file a federal suit when a state-court appeal is pending"). To the extent that Hawthorne seeks to challenge the sufficiency of service in the 2014 state court case, therefore, that challenge is an attack on a final state court judgment and so is barred by the *Rooker-Feldman* doctrine. *See Riddle v. Deutsche Bank Nat'l Trust Co.*, 599 Fed. App'x 598, 600 (7th Cir. 2015) (finding *Rooker-Feldman* barred plaintiff's claim that he was injured when the defendants foreclosed on his house despite knowing that their service of process was defective, saying that because the state court judgment had authorized the foreclosure and sale of his house, his federal claim was "an attack on that judgment") (citing *Exxon Mobil*, 544 U.S. at 284; *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 646–47 (7th Cir. 2011); *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532–33 (7th Cir. 2004)).

To the extent the complaint alleges that the defendants failed to properly communicate with him or otherwise act appropriately in connection with their attempts to collect a debt, however, that purported claim is not "closely enough related" to any state court judgment to trigger *Rooker-Feldman*. That doctrine is a narrow one, and only bars a federal claim where there is "no way for the injury complained of by [the] plaintiff to be separated from [the] state court judgment." *Jakupovic*, 850 F.3d at 902-03 (quoting *Sykes*, 837 F.3d. at 742) (internal quotation marks omitted). The state court judgments in the foreclosure and forcible eviction litigation did not turn on any alleged debt collection tactics, and any injuries Hawthorne alleges that he suffered from such communications by the defendants can be separated from the state court rulings. The FDCPA does govern how debt collectors are to communicate with debtors, but the issues of whether that federal statute applied in circumstances here—and, if so, whether the

9

defendants violated it—had no bearing on the state court judgments. As to Hawthorne's remaining claims, then, this is not a case where "there is no conceivable way to redress the [alleged] wrong without overturning the order of a state court." *Sykes*, 837 F.3d at 743.

This Court also rejects the defendants' argument that *res judicata* applies to bar the remainder of Hawthorne's claims. It is true that "[e]ven if *Rooker-Feldman* does not bar a claim, when there is a prior state-court judgment that appears to cover the same transaction or the same issues as the later federal case, the possibility exists that *res judicata* may apply." *Mains*, 852 F.3d at 675. In circumstances involving a prior state court judgment, "the Full Faith and Credit Statute, 28 U.S.C. § 1738, requires [federal] courts to give a state court judgment the same preclusive effect it would have in state court." *Id.* (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir. 1999). "In general, the doctrine of claim preclusion or *res judicata* bars a party from asserting a claim that has already been resolved in another lawsuit between the same parties or those in privity with them, and the doctrine reaches both claims that were actually asserted in an earlier lawsuit and those that could have been asserted but were not." *Russian Media Group, LLC v. Cable Am., Inc.*, 598 F.3d 302, 310 (7th Cir. 2010). For *res judicata* to apply in Illinois, "there must be (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) the same cause of action, and (3) the same parties or their privies." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 975 (7th Cir. 2016) (quoting *Chi. Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1079 (7th Cir. 2011)) (internal quotation marks omitted).

This Court will not dismiss Hawthorne's FDCPA allegations on the basis of *res judicata*. The defendants argue that Hawthorne's claims in the current suit arise from the same core of operative facts as the state court litigation, and assert that Hawthorne already raised "a lengthy

FDCPA-based argument in his state court filings." Mot. to Dismiss at 7-8. But while the defendants point to the notices of removal that Hawthorne filed in the underlying eviction actions, *see* Removal Notices, ECF No. 33-1, in which Hawthorne does accuse them of violating the FDCPA, there is no indication that his FDCPA claim was ever litigated to a final judgment on the merits.[6] Notably, this Court remanded the two actions that Hawthorne sought to remove, noting in one that even if an FDCPA violation could provide a defense to the claims against him, a federal law defense does not provide a basis for federal jurisdiction. *See Hawthorne v. Inverse Asset Fund, LLC*, No. 16 C 07440, Remand Order, ECF No. 6 (N.D. Ill. July 26, 2016); *Silverleaf Funding, LLC v. Home Electronic Solutions, Inc. et. al*, No. 15 C 04443, Remand Order, ECF No. 5 (N.D. Ill. June 10, 2015). The underlying state court judgments make no reference to the FDCPA.

The defendants correctly argue that Illinois law provides that "[s]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts" or the "same transaction." *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011) (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998)). But the fact remains that an eviction action is an effort to obtain lawful possession of a property, not to collect a debt. *See Eviction*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("The act or process of legally dispossessing a person of land or rental property."). To the best this Court can decipher Hawthorne's allegations, they seem to be based at least partly on a

---

[6] As noted, the January 2015 state court order does qualify as a final judgment under Illinois law. The state court's September 8, 2016 orders of possession in the eviction proceeding also qualify as final judgments. *See In re DiGregorio*, 458 B.R. 436, 442 (N.D. Ill. Bankr. 2011) ("Illinois courts treat eviction orders under the [Illinois Condominium Property Act] as final judgments subject to appeal.") (citing *Knolls Condo. Ass'n v. Harms*, 781 N.E.2d 261, 263-64 (Ill. 2002)).

transaction—an alleged debt collection, asserted mainly in connection with DeBella's March 2016 communications with Hawthorne— that is separate from the 2016 eviction case.

Turning to the merits, however, Hawthorne has failed to state a claim for violation of the FDCPA. To defeat a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Rule 8(a)(2) requires just "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not bring "detailed factual allegations" to satisfy this standard, but the Supreme Court has specified that Rule 8(a) requires more than "labels and conclusions," and that "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The FDCPA is geared toward addressing the use of "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). In his complaint, Hawthorne includes a laundry list of FDCPA provisions that he alleges the defendants violated. In particular, he states that the defendants violated § 1692d, which bars debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." *See* 15 U.S.C. § 1692d. Examples of such conduct include causing "a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass," using "obscene or profane language," and using or

threatening to use "violence or other criminal means to harm the physical person, reputation, or property of any person." *Id*. Hawthorne also asserts that the defendants violated § 1692j, which makes it unlawful to "design, compile and furnish any form knowing that such form would be used to create a false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." *Id.* at § 1692j. Other allegedly violated provisions include § 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt;" § 1692e, which prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt;" and § 1692i, which requires that debt collectors who sue on a debt against a consumer in order to enforce an interest in real property must do so "only in a judicial district or similar legal entity in which such real property is located." *See id.* at §§ 1692f, 1692e, 1692i.

Claims under that statute are subject to a one-year statute of limitations; as Hawthorne filed this suit on March 8, 2016, any basis for his claim must have occurred after March 8, 2015, at the very latest. *See* 15 U.S.C. § 1692k. The only allegation that falls within the permissible timeframe is that concerning DeBella's March 2016 communication.[7] In his complaint, Hawthorne alleges that at that time, New Plan and DeBella threatened to forcibly remove him and his family from their home without taking certain steps—such as "providing accurate accounting or chain of title" or "providing an authentic agreement signed by plaintiff"—beforehand. Compl. ¶ 18. Hawthorne alleges that DeBella "verbally terrorized" him, and that

---

[7] Hawthorne also alleges that on August 2, 2015, Woods came to Hawthorne's residence and "left a note with a visiting family member," but the complaint makes no allegation as to what this note even said, let alone that Woods was attempting to collect a debt. *See* Compl. ¶ 17. This portion of Hawthorne's complaint cites only to Exhibit 6, which is the previously described letter explaining that DeBella of New Plan was authorized to act on behalf of Inverse Asset Fund. *See* Compl. Ex. 6.

DeBella said, "We can do this the hard way, or you can work with me and not get the Cook County Sheriffs to come sit you out." *Id.* But those allegations relate to the alleged efforts to evict Hawthorne, which were the subject of the 2016 eviction proceeding. As this Court has previously noted, *supra*, at 11, an effort to evict seeks to obtain possession of property; it has nothing to do with an effort to collect a debt. That was a matter for the foreclosure suit filed in 2014, but that judgment was entered more than a year before Hawthorne filed this suit.

The only allegation concerning conduct within the FDCPA's limitations period that arguably relates to collecting a debt is Hawthorne's assertion that "DeBella also alleged that somehow plaintiff(s) owed an alleged $7500 in back rents." *See id.* This falls well short of plausibly stating an FDCPA violation. To begin, Hawthorne has failed to even adequately allege that DeBella was attempting to collect a debt;[8] Hawthorne merely asserts that DeBella informed him that he owed back rent, but makes no allegation that DeBella asked for repayment. *Cf. McCready v. Jacobsen*, No. 06-2443, 2007 WL 1224616, at *1 (7th Cir. Apr. 25, 2007) ("We previously have concluded that a letter informing plaintiffs of the current status of their account and demanding no payment was not a communication 'in connection with the collection of any debt' under the FDCPA.") (citing *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998)). The complaint also fails to adequately allege a violation of any of the statutory provisions Hawthorne enumerates. Hawthorne does not allege that any further communication or

---

[8] This failure also dooms any claim Hawthorne may be attempting to bring that the defendants violated 15 U.S.C. § 1692g by not properly responding to the "Notice of Dispute of Debt" that Hawthorne alleges he served on them at some unspecified date. *See* Compl. ¶ 14. That statutory provision sets out what information a debt collector must provide a consumer within five days of initially communicating with him or her regarding the debt collection, and also sets forth how a debt collector must respond to a consumer who provides timely notification that the sought-after debt is disputed. *See* 15 U.S.C. § 1692g. Because Hawthorne has failed to adequately allege that the defendants attempted to collect a debt from him in the first place, however, he has also failed to allege that the defendants violated this statutory provision.

attempt to collect a debt occurred after this single mention of back rents, and does not allege that any defendants threatened him by use of criminal means or otherwise exhibited conduct related to debt collection that rose to the level of harassment or abuse under the statute. And the complaint does not sufficiently allege any instance within the statutory period that the defendants made any deceptive or misleading representations regarding the collection of any debt. The only potential "form" to which Hawthorne points is the law firm letterhead on which the letter explaining DeBella's authorization appeared, and that letter makes no mention of any debt or debt collection effort.

Hawthorne has therefore failed to state a claim for violation of the FDCPA.[9] As that theory provided the sole asserted basis for federal jurisdiction in this case, this Court declines to address Hawthorne's state court claims. To the extent that Hawthorne's FDCPA claim is premised on violations of state procedural rules in the foreclosure action, the Court lacks jurisdiction to review the claim and it is dismissed without prejudice to refiling in state court.[10] The dismissal of the FDCPA claim is with prejudice to the extent the complaint is premised on conduct occurring before March 8, 2015; otherwise, it is without prejudice and with leave to

---

[9] The defendants also argue that Hawthorne failed to state an FDCPA claim because (1) he does not adequately allege that they were debt collectors, and (2) because the statute does not apply to commercial debts, and the state court found this was a commercial property. Mot. to Dismiss at 10-11. These arguments are, however, quite abbreviated. Should the defendants wish to raise these arguments in a future motion to dismiss, they would do well to develop them further.

[10] Where claims are jurisdictionally barred under *Rooker-Feldman*, dismissal without prejudice is appropriate. *See Jakupovic*, 850 F.3d at 904 (citing *Frederiksen v. City of Lockport*, 384 F.3d 437, 438–39 (7th Cir. 2004) ("When the *Rooker-Feldman* doctrine applies, there is only one proper disposition: dismissal for lack of federal jurisdiction. A jurisdictional disposition is conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits.")).

amend within 28 days of the entry of this Order. In the event an amended complaint is not timely filed, the case will be terminated.

Date: June 14, 2017

John J. Tharp, Jr.
United States District Judge